**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 22-57-DLB-HAI**
**CIVIL ACTION NO. 24-143-DLB-HAI**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

v.                    **ORDER ADOPTING REPORT AND RECOMMENDATION**

**DOMINIQUE LYTTLE**                                                              **DEFENDANT**

* * * * * * * * * * * * * *

This matter is before the Court on the April 20, 2026 Report and Recommendation ("R&R") of United States Magistrate Judge Hanly A. Ingram (Doc. # 93), wherein he recommends that the Court deny Defendant Dominique Lyttle's *pro se* Motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. # 57). Lyttle having filed Objections (Doc. # 98), and the United States having filed a Response (Doc. # 99), the R&R is now ripe for the Court's consideration. For the following reasons, Defendant's Objections are **overruled**, the R&R is **adopted** as the opinion of the Court, and the § 2255 Motion (Doc. # 57) is **denied**.

I.      **FACTUAL BACKGROUND**

On March 24, 2023, Defendant pled guilty to one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), one count of possession with intent to distribute fentanyl under 21 U.S.C. § 841(a)(1), and one count possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c)(1)(A). (Docs. # 31 and 33). In his signed plea agreement, Defendant admitted the following:

(a) On or about July 20, 2021, officers with the Boone County Sherriffs Office responded to the Hampton Inn in Walton, Kentucky, based on a report that a subject was unconscious in a vehicle. When a deputy [Deputy Montgomery] arrived, he found the subject, later identified as the Defendant, behind the wheel of a vehicle with the engine revving. Witnesses told the deputies that they tried but were unable to wake the Defendant. Concerned for the Defendant's well being, the deputies broke the glass of the driver's window and opened the door of the vehicle.

(b) Deputies tried again to rouse the Defendant, but he remained unresponsive. EMS personnel arrived and quickly administered Narcan to the Defendant. Shortly thereafter, the Defendant regained consciousness. A search of the vehicle revealed a firearm in the center console - a Springfield Armory, Model XDS, 9-millimeter pistol, bearing serial number S3922335 - along with a bag of suspected drugs.

(c) The suspected drugs were tested and found to contain approximately 26.991 grams of fentanyl, a Schedule II controlled substance.

(d) The firearm, which was confirmed stolen, was manufactured in Croatia, and therefore, traveled in interstate commerce prior to being recovered in Kentucky. The Defendant admits knowingly possessing the firearm, and the fentanyl. The Defendant further admits that he intended to distribute the fentanyl and that he possessed the firearm in furtherance thereof.

(e) The Defendant was previously convicted of the following "felony drug offense": on or about December 4, 2017, the Defendant was convicted of First Degree Trafficking in a Controlled Substance, in violation of KRS 21 SA.1412, in Perry County Circuit Court, Hazard, Kentucky, case number 17-crOO 101. The Defendant admits that he knew he was a felon at the time of the events described herein.

(Doc. # 33 at 2-3).   Defendant additionally agreed to waive the right to appeal or collaterally attack the guilty plea, conviction, and sentence, with the exception of claims of ineffective assistance of counsel.  *Id*. at 5.

On June 22, 2023, Defendant filed a *pro se* letter "expressing [his] frustrations with [his] case." (Doc. # 37 at 1).  To be specific, Defendant believed he had been "pressured into signing an unjust plea[.]"  (*Id*. at 2).  Defendant argued the plea was unfair because

2

he did not agree with the § 924(c)(1)(A) charge but pled guilty anyway "due to fear of receiving a sentence of 35 years had [he] went to trial and lost because that's the way [his] lawyer presented the situation to [him]." (*Id.*).  On July 6, 2023, the Court addressed Defendant's June 22 letter and subsequently continued sentencing to allow Defendant time to file a motion to withdraw the plea through counsel.  (Doc. # 38).  On July 13, 2023, Defendant filed a Motion to withdraw his plea (Doc. # 39).  On August 25, 2023, the Court denied Defendant's Motion, concluding that Defendant failed to bear his burden in proving that the withdrawal of his plea agreement was "fair and just."  (Doc. # 43 at 7 (quoting Fed. R. Crim. P. 11(d)(2)(B))).

On September 8, 2023, Defendant was sentenced to a total term of 111 months, to be followed by six (6) years of supervised release.  (Doc. # 48 at 2-3).  At sentencing Defendant was advised of his right to appeal.  (Doc. # 47).  Both Defendant, and his trial attorney James R. Pennington signed the Court's Advice of Right to Appeal, which was filed in the record.  (*Id.*).  On September 22, 2023, Pennington filed a notice stating that he had "discussed with Mr. Lyttle the appellate process and the right to file an appeal" and that Pennington "now believes that Mr. Dominique Lyttle has made the decision not to file an appeal in this case."  (Doc. # 51 at 1).

On September 12, 2024, Defendant filed the instant § 2255 Motion under the prison mailbox rule (Doc. # 57).  The Motion sought relief on nineteen Grounds:

1. Counsel was ineffective for failing to file a notice of appeal upon request. (Doc. # 57 at 3).

2. Defendant was 'never given his Miranda warnings.'  *Id*. at 16.

3. Counsel was ineffective for failing to challenge the possession with the intent to distribute charge.  *Id*. at 13.

3

4. Counsel was ineffective for failing to object to the obstruction of justice sentencing enhancement. *Id*. at 10.

5. The Court ignored Lyttle's complaints about his retained attorney. *Id*. at 23.

6. Counsel was ineffective for not telling Lyttle the government lacked sufficient information to convict him on the § 841 and § 924(c) charges. *Id*.

7. Because of counsel's failure to object, Lyttle was unfairly sentenced on the § 841 and § 924(c) convictions. *Id*. at 23-24.

8. Counsel misadvised or deceived Lyttle about the consequences of his plea agreement. *Id*. at 24.

9. Counsel was ineffective for failing to inform Lyttle that the government had the burden to show Lyttle knew the firearm found at the scene was stole, leading to an improper sentencing enhancement. *Id*. at 25.

10. Counsel failed to advise Lyttle that he could enter into an open plea. *Id*. at 25-26.

11. Counsel should have predicted Lyttle's sentence and failed to inform him what it could or would be. *Id*. at 26.

12. Counsel coerced Lyttle into responding affirmatively to Judge Bunning's questions during his plea colloquy. *Id*.

13. Defense counsel committed malicious prosecution by misleading him to plea guilty to the § 841(a) and the § 924(c) charges. *Id*.

14. Counsel did not show Lyttle his discovery and misadvised him about the strength of the government's evidence. *Id*. at 26-27.

15. Counsel did not challenge the 924(c) 'enhancement.' *Id*. at 27.

16. Counsel was ineffective for failing to argue that Lyttle should get a third point for acceptance of responsibility credit during sentencing. *Id*.

17. Counsel was ineffective for failing to object to the testimony of a witness during the evidentiary hearing on Lyttle's motion to suppress. *Id*.

18. Counsel was ineffective for not challenging the 841 or 924(c) charges or the 3C1.1 sentencing enhancement based on testimony given during the evidentiary hearing on his motion to suppress. *Id*.

19. The § 924(c) change in his Indictment was unconstitutional.  *Id*. at 28. (Doc. # 93 at 3-4 (citing Doc. # 57)).[1]

On April 24, 2025, Judge Ingram concluded that Defendant had met the burden on two of the grounds raised in his Petition: Ground One and Ground Twelve.  (Doc. # 73 at 3) and scheduled an evidentiary hearing on those grounds.

On July 25, 2025, the Court held a limited evidentiary hearing on the issues of (1) whether Defendant made a timely request to his defense attorney to file a notice of appeal (Ground 1); and (2) whether Defendant was coerced by his defense attorney into affirmatively responding to questions during the plea colloquy (Ground 12).  (Doc. # 79). The United States was represented by Kyle M. Winslow, and Defendant was represented by his court appointed counsel Noah R. Friend.  (*Id*.).  The Court heard testimony of two witnesses—Defendant and attorney Pennington.  (Doc. # 82).  At the conclusion of the hearing, the Court ordered both parties to file supplemental briefing.  (*Id*.).  Both parties filed supplemental briefings (Docs. # 87 and 91), and on April 20, 2026, Judge Ingram issued his R&R, recommending that Defendant's § 2255 Motion be denied (Doc. # 93). After two extensions (Docs. # 94 and 96) Defendant filed his Objections to the R&R (Doc. # 98).  The United States filed a Response (Doc. # 99).  Thus, the R&R is now ripe for the Court's review.

---

[1]  Defendant's § 2255 Motion was a total of twenty-eight pages.  (*See* Doc. # 57).  The Court obtained this summary of all Grounds raised in Defendant's Motion from Judge Ingram's R&R. (*See* Doc. # 93 at 3-4).

## II.    REPORT AND RECOMMENDATION

In the R&R, Judge Ingram began by stating that "[t]o successfully assert an [Ineffective Assistance of Counsel] claim, a defendant must prove both deficient performance and prejudice." (Doc. # 93 at 5 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006))). To prove deficient performance, Judge Ingram noted, "a defendant must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" (*Id*. (quoting *Strickland*, 466 U.S. at 687 (internal quotations omitted))). To prove prejudice, Judge Ingram explained that "a defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*Id*. (quoting *Strickland*, 466 U.S. at 694)).

After establishing the standard for an Ineffective Assistance of Counsel ("IAC") claim, Judge Ingram proceeded to address Defendant's first IAC claim—failure to file a notice of appeal. (*Id*. at 6). Judge Ingram began by noting that the Sixth Circuit has been clear that "'the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment.'" (*Id*. (quoting *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (internal citations omitted))). Judge Ingram then recalled the appropriate analysis for a potential failure to file an appeal:

> First, we must determine whether the defendant gave counsel express instructions regarding an appeal. Second, if we find that the defendant did not provide express instructions, then we must determine whether counsel consulted with the defendant about an appeal. Finally, if there was no consultation, then we must decide whether the failure was objectively unreasonable.

6

(*Id*. (quoting *Johnson v. United States*, 364 F. App'x 972, 975-76 (6th Cir. 2010) (discussing *Flores-Ortega*, 528 U.S. 470, 478-86 (2000)))).

With this analysis in mind, Judge Ingram proceeded to first analyze whether Defendant gave Pennington express instructions regarding an appeal.  Judge Ingram recalled that at the evidentiary hearing, Defendant testified that he did ask Pennington to file an appeal, while Pennington testified that they "discussed the merits of an appeal and the restrictions of Lyttle's waiver of appellate rights" but Defendant ultimately did not instruct him to file an appeal.  (*Id*. at 8).  Based on the entirety of the record before him, Judge Ingram concluded that the record supported Pennington's version of events.  (*Id*. at 9).  Specifically, Judge Ingram noted three reasons Pennington's version of events was more credible: (1) Defendant stood to benefit from misleading the court; (2) filings made prior to the § 2255 motion—including a notice of no appeal and motion for reconsideration—indicated that Defendant had not previously considered appealing his case; and (3) Defendant's lack of specificity at the evidentiary hearing.  (*Id*. at 9-10).  Judge Ingram also addressed Defendant's argument in his post-evidentiary hearing brief, where Defendant emphasized that he had testified that Pennington told him he was not permitted to appeal based on the language in the waiver.  (*Id*. at 11 (citing Doc. # 87 at 6)).  However, Judge Ingram concluded that that specific dialogue between Defendant and Pennington "suggests that Pennington engaged in a conversation with Lyttle wherein he gave Lyttle legal advice about the scope of his plea agreement waiver, not that he had declined to file a notice to appeal."  (*Id*.).

Because Judge Ingram concluded that Defendant had not proven that he unequivocally and expressly requested Pennington to file a notice of appeal, he next

analyzed whether Pennington fully consulted with Defendant about a possible appeal. (*Id*. at 12).  Judge Ingram noted that the record reflected both Pennington and Defendant recalling a phone conversation where his appellate rights were discussed.   (*Id*.).  Accordingly, Judge Ingram concluded that the record demonstrated that Pennington engaged in a complete consultation and Defendant had "not established counsel was ineffective related to a request for an appeal."  (*Id*.).

After concluding that Defendant failed to establish an IAC claim on Ground One, Judge Ingram moved on to Ground Twelve.  Judge Ingram began by acknowledging that Federal Rule of Criminal Procedure 11 governs plea colloquies and ensures that a district court "is satisfied that a guilty plea is made knowingly, voluntarily, and intelligently."  (*Id*. at 13 (citing *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005))).  Judge Ingram highlighted that "[w]hen the District Court 'has scrupulously followed the required [Rule 11] procedure' during a plea colloquy, 'the defendant is bound by his statements in response to that court's inquiry.'" (*Id*. (quoting *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990))).   However, Judge Ingram noted, "'misunderstanding, duress, or misrepresentation by others' may render a plea colloquy that otherwise appears properly conducted."  (*Id*. (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)))

In reviewing Defendant's testimony at the evidentiary hearing, Judge Ingram observed that "Lyttle did not raise any issue of coercion during his rearraignment" (*Id*. (citing Doc. # 82 at 29)).  In fact, Judge Ingram remarked, "during his rearraignment, he expressly stated that Pennington did not instruct him to answer all of his questions affirmatively[.]"  (*Id*.; *see also* Doc. # 40 at 8-9)).  Judge Ingram then noted that in both his motion and at the evidentiary hearing, Defendant failed to explain how Pennington

8

coerced him, and when specifically asked why he told the Court he had reviewed discovery when, allegedly, he had not, Defendant responded that he was "[j]ust – I mean, just agreeing, and pretty much frustrated, trying to get – trying to get it over with at that point." (*Id.* at 14 (quoting Doc. # 82 at 14)). Judge Ingram concluded that Defendant's statements were "inconsistent with [both] the alleged coercive influence of his counsel" and Pennington's testimony that he never told Defendant to lie to the Court. (*Id.*).

Defendant also alleged that he was untruthful with the Court during his rearraignment because he was concerned about the potential time he would receive. (*Id.* (citing Doc. # 82 at 32)). However, Judge Ingram concluded that "[b]eing accurately informed of the potential penalties in his case does not constitute coercion." (*Id.* at 15). Finally, Judge Ingram addressed an argument made in Defendant's post-hearing brief, wherein Defendant argued that "the record shows that he did not 'knowingly, voluntarily, and intelligently enter into his plea agreement.'" (*Id.* (quoting Doc. # 87 at 5)). Judge Ingram concluded that this argument, however, "exceeds the scope of [Defendant's] initial motion, which only allege[d] his responses to the Court's plea colloquy were not made knowingly, voluntarily, and intelligently." (*Id.*). Accordingly, Judge Ingram reasoned, "Lyttle's general and vague allegations that statements made during his plea colloquy were untrue do not constitute ineffective assistance of counsel. As Lyttle has failed to demonstrate that he was coerced, he is not entitled to relief on this Ground." (*Id.*).

Next, Judge Ingram addressed the remainder of Defendant's seventeen claims. Grounds Three, Six, Seven, Eight, Thirteen, Fifteen, and Nineteen were premised on an argument that the government lacked a sufficient factual basis to prove the §§ 841 and 924(c) charges. (*Id.*). On each one of these, Judge Ingram concluded that Defendant

9

was not entitled to relief because his admissions in his plea agreement and during his rearraignment rendered the arguments meritless. (*Id*. at 16-21).

Next, Judge Ingram addressed Ground Five, where Defendant argued that the "Court 'failed to acknowledge the letter he sent voicing his frustration with his attorney's lack of effort and weak ethics' and that he 'stated in open court that he was not happy with his attorney's performance and nothing was done to relieve him.'" (*Id*. at 22 (quoting Doc. # 57 at 23)). Judge Ingram again concluded that this Ground was meritless because Defendant never requested replacement of counsel, never stated in open court that he was not happy with his attorney's performance, and the Court did, in fact, address the concerns raised in his letter. (*Id*. at 22-23).

Next, Judge Ingram addressed Grounds Four, Nine, and Sixteen, all of which related to various sentencing enhancements. (*Id*. at 23-24). As to Ground Four, which related to a sentencing enhancement for obstruction of justice, Judge Ingram noted that this lacked merit because Defendant "agreed that the conduct occurred as described in the plea agreement." (*Id*.). As to Ground Nine, Defendant argued Pennington was ineffective for not informing him of the government's burden to prove that Defendant was aware his firearm was stolen. (*Id*. at 24 (citing Doc. # 57 at 25)). However, Judge Ingram concluded this too was meritless because "'no such burden exists.'" (*Id*. at 24 (quoting Doc. # 69 at 8)). With respect to Ground Sixteen, Defendant argued Pennington was ineffective for not arguing that he should get three points for acceptance of responsibility. (*Id*.). Judge Ingram concluded that this Ground "lack[ed] factual basis" because "the record demonstrates that counsel did argue that Lyttle be given three points for acceptance of responsibility credit." (*Id*.).

10

Finally, Judge Ingram addressed the various miscellaneous claims.  Ground Two was rejected because "there was no constitutional violation at issue, [thus] defense counsel could not have asserted an objection[.]"  (*Id*. at 25).  In Ground Ten, Defendant argued that Pennington (1) failed to explain he could enter an open plea and (2) he was prejudiced by Pennington's failure to advise that he could lose an acceptance of responsibility point for proceeding with his suppression hearing.  (*Id*. at 25-26).  Judge Ingram rejected the first argument, finding that Defendant could not prove that but for counsel's failure, he would have entered an open plea. (*Id*. at 25).  Judge Ingram rejected the second argument on the grounds that it was meritless.  (*Id*. at 26).  Ground Eleven was rejected because it "fail[ed] to raise any constitutional argument with specificity" and, "even if there was a deficiency in what counsel advised Defendant about his sentence, it was cured by the plea colloquy."  (*Id*.).  Ground Fourteen was rejected because Defendant's admission while under oath during his rearraignment that he had reviewed the evidence with his attorney contradicts the argument that his attorney failed to give him proper advice on the strength of the government's evidence.  (*Id*. at 27).  Grounds Seventeen and Eighteen, which each concerned testimony from Deputy Montgomery during the suppression hearing, were rejected for lack of specificity and being meritless. (*Id*. at 28).

Judge Ingram additionally addressed the arguments contained in Defendant's Reply brief (Doc. # 71).  (*Id*. at 28-29).  Judge Ingram rejected these arguments as well, concluding that the "Court will not consider these new claims to which the government had no opportunity to respond."  (*Id*. at 29).

## III.     ANALYSIS

### A.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion."  Under Federal Rule of Criminal Procedure 59(b)(1)(2), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations."  The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation."  Fed. R. Crim. P. 59(b)(3); see also 28 U.S.C. § 636(b)(1)(C).  Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted).  Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object."  *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001).  "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'"  *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

**B.     Objections**

Defendant's Objections are limited to Grounds One and Twelve.  (Doc. # 98 at 4). Specifically, Defendant argues he is entitled to relief on Ground One because he made an explicit and timely request to Pennington to file an appeal, and on Ground Twelve because he was coerced into responding affirmatively during the plea colloquy.  (*Id*.).  The United States disagrees, arguing that Defendant's testimony that he directed Pennington to file an appeal is not supported by evidence, and he failed to establish that he was coerced into pleading guilty.  (Doc. # 99 at 2).

At the outset, Defendant's Objections amount to little more than a summary of what has been presented before.  As stated above, an objection that does no more than "state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."  *VanDiver*, 304 F. Supp.2d at 938.  Defendant's Objections merely summarize what has been presented before.  In fact, Defendant's Objections are a near identical copy of his post-hearing supplemental brief.  (*Compare* Doc. # 87 *with* Doc. # 98).  These are not proper objections for the Court's consideration.  *See Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (finding that such objections cause "duplication of time and effort [that] wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act").  Defendant's Objections may be denied solely on this basis.  Nevertheless, the Court will undertake a *de novo* review of the evidentiary hearing transcript and R&R.

### 1. Ground One: Failure to File a Notice of Appeal

As to Ground One, the Court finds that the disposition of this argument comes down to a credibility determination—whether the Court believes that the Defendant in fact asked Pennington to file an appeal on his behalf.  Defendant argues that his testimony, coupled with Pennington's testimony "supports [his] assertions" that he directed Pennington to file an appeal.  (Doc. # 98 at 4).  To be specific, Defendant points towards Pennington's testimony where, when asked if Defendant wanted to appeal, Pennington testified "[h]e wanted to -- he was still unhappy getting into his -- he was still unhappy with the firearm enhancement, the firearm enhancement. . . . I kept coming back to Mr. Lyttle on the plea agreement and what the bounds were."  (*Id.* (quoting Doc. # 82 at 46:1-13)).

In reviewing this testimony, Judge Ingram concluded that Pennington's testimony of events was more credible than Defendant's.  Judge Ingram did so for multiple reasons, including the correct assumption that Defendant had a motive to testify the way he did at the evidentiary hearing, as well as the lack of specificity in Defendant's testimony and the various documents filed in the record that at no point indicated a desire to appeal.  (Doc. # 93 at 8-10).  Judge Ingram concluded that despite Defendant's testimony, "the broader context" shows that Defendant did not direct Pennington to file an appeal.  (*Id.* at 10). The Court accepts Judge Ingram's credibility determination and ultimate conclusion that Defendant did not direct Pennington to file an appeal.  Because Judge Ingram "had the opportunity to observe the testimony of both Defendant [Lyttle] and [Pennington], the Court will defer to his credibility determination. '[T]he Court finds no reason to question the Magistrate Judge's determinations of the witnesses' credibility in this instance." *United States v. Howard*, No. 15-22-DLB-HAI-3, 2019 WL 1011813, at *3 (E.D. Ky. Mar.

14

4, 2026) (citing *United States v. Davidson*, No. 6:05-cr-30-DCR, 2008 WL 170507, at *6 (E.D. Ky. Jan. 17, 2008)).

### 2. Ground Twelve: Coercion during Plea Colloquy

Next, Defendant objects to Judge Ingram's conclusion that he was not coerced to respond affirmatively to all questions during plea allocution.  (Doc. # 98 at 6).  Defendant reiterates that his "position is not that the Court was insufficient in its Rule 11 colloquy[.]"  (*Id.*).  Nevertheless, he maintains that he was coerced into pleading guilty.  (*Id.*).  But, as noted by Judge Ingram, Defendant "'is bound by his statements in response to that court's inquiry."  (Doc. # 93 at 13 (quoting *Ramos*, 170 F.3d at 563)); *see also United States v. Wilford*, No. 24-6139, 2026 WL 1093621, at *3 (6th Cir. Apr. 22, 2026) ("But [the defendant] is bound by her answers at the change-of-plea hearing.").  As held by the Sixth Circuit in *United States v. Pitts*, "[a] criminal defendant is bound by the answers he gives when 'the court has scrupulously followed the required procedure' for properly conducted plea colloquy.'"  997 F.3d 688,. 701 (6th Cir. 2021) (quoting B*aker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).  Because Defendant does not contest that the Court was insufficient in its Rule 11 colloquy, his "after-the-fact assertions that [he] felt forced to plea guilty contradict [his] statements at the change-of-plea hearing."  *Wilford*, 2026 WL 1093621, at *3.

Defendant's emphasis on various statements he, or the Court, made does not alter this conclusion.  For example, Defendant points to a question from the Court during his rearraignment where, when asked if he had reviewed the evidence with his attorney, the Court noted that Defendant was "kind of hemming and hawing" and asked if Pennington needed a minute to speak with Defendant.  (*Id.* at 6 (quoting Doc. # 40 at 5:16)).

15

Defendant states that, despite the fact that he eventually answered in the affirmative, this was "caused by coercion by his attorney." (*Id*.).  However, Defendant seems to disregard a later statement made by the Court, where the Court very explicitly asked

> THE COURT: The reason I ask these questions is, I get letters from defendants months, years after they plead guilty where they say, "Dear Judge Bunning, my lawyer made me plead guilty. I didn't want to plead guilty but my lawyer made me do it. And I only answered yes to your questions because he told me so." I want to make sure now that's not the case. That's why I'm asking you about this. Is Mr. Pennington forcing you to plead guilty?
>
> THE DEFENDANT: No sir.
>
> THE COURT: Is this your choice?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is anyone forcing you to do this?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Now, you have retained Mr. Pennington to represent you in this particular case.  Are you fully satisfied with the advice and representation he's provided to you?
>
> THE DEFENDNT: Yes, sir.

(Doc. # 40 at 8-9).

Moreover, Defendant points to statements in both his *pro se* letter and § 2255 Motion, where he alleged that he was pressured to sign the plea agreement and answer the Court's questions in the affirmative for fear of receiving a thirty-five year sentence. (Doc. # 98 at 7 (quoting Doc. # 37)).  This argument fails for two reasons.  First, the last paragraph of the plea agreement, signed by Defendant on March 24, 2023, states: "The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, and that the Defendant's attorney has fully explained this Agreement to the Defendant, and that *the Defendant's entry into this Agreement is voluntary*."  (Doc. #

16

33 at 7) (emphasis added).  Thus, Defendant's statements that he was forced to sign the plea agreement contradict the plea agreement itself.  Second, not only did Judge Ingram already conclude that "[b]eing accurately informed of the potential penalties in his case does not constitute coercion" (Doc. # 93 at 15) but the Sixth Circuit itself has emphasized that "counsel for [a defendant] might well have been remiss had he not informed [the defendant] of the maximum sentence possible."  *Baker*, 781 F.2d at 91.  Accordingly, Defendant has failed to establish that he was coerced into answering in the affirmative at the plea colloquy.

Because Defendant has not proved by a preponderance of the evidence that he directed Pennington to file an appeal or that he was coerced into his admissions at the plea, his § 2255 Motion must be **denied**.

## IV.    CONCLUSION

For the reasons stated herein, Defendant has failed to raise any meritorious legal objections to Judge Ingram's R&R (Doc. # 93).  Accordingly,

**IT IS ORDERED** as follows:

(1)    The Magistrate Judge's Report and Recommendation (Doc. # 93) is **ADOPTED** as the opinion of this Court;

(2)    Defendant Lyttle's Objections (Doc. # 98) to the Report and Recommendation are **OVERRULED**;

(3)    Defendant Lyttle's Motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. # 57 is **DENIED**;

(4)    For the reasons set forth in the R&R, the Court finds that there would be no arguable merit for an appeal in this matter and, therefore, **NO CERTIFICATE OF APPEALABILITY will be issued**; and

(5)    The Court will enter a corresponding Judgment with this Order.

This 25th day of June, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2022\22-57 MOO re R&R.docx